# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

CHARLES NYARKO, *et al.*                   \*

      Plaintiffs,                   \*

      v.                       \*        Civil Action No. RDB-18-3618

BMW OF NORTH AMERICA, LLC, *et al.*,     \*

      Defendants.                 \*

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

In this case, thirteen Plaintiffs[1] ("Plaintiffs") bring fraud and warranty-based claims against BMW of North America, LLC ("BMW NA") and Bavarian Motor Works ("BMW") arising from BMW's allegedly defective N63 engines. Plaintiffs' Amended Complaint brings four causes of action: Breach of Warranty Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (Count I); Breach of Implied Warranty of Merchantability Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* and Md. Code Ann., Com. Law § 2-314 (Count II); Breach of Express Warranty Pursuant to the Md. Code Ann., Com. Law § 2-313 (Count III); Unfair and Deceptive Trade Practices, Md Code Ann., Com. Law, § 13-301, *et seq.* (Count IV).

Plaintiffs commenced this action on November 26, 2018 after opting out of a nationwide class action, *Bang v. BMW of N. Am. LLC*, No. CV 15-6945 (D.N.J.). Since the

---

[1] The Plaintiffs are Charles Nyarko, Lori Evans, Kelly Rutherford, Ronald McKeever, John Michael Albert, Aziz Berraoui, Kathy Swann, Sharon Inghram, Rita Clinton, Laron Morgan, Caroline Chepkwony, Kevan Lee, and Kevin Daniels.

settlement of the *Bang* action, scores of opt-out plaintiffs have filed lawsuits against BMW across the country.[2]  Now pending is BMW of North America, LLC's Motion to Dismiss Amended Complaint or for Summary Judgment and to Sever Claims of Misjoined Plaintiffs. (ECF No. 21.)  This Court has reviewed the parties' submissions and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018).  For the reasons stated herein, BMW NA's Motion (ECF No. 21) is DENIED.

## BACKGROUND

Plaintiffs allege that BMW's N63 engines caused their BMW vehicles to consume an excessive amount of engine oil, requiring frequent replenishment of the oil, potentially damaging engine components, and posing a risk of injury.  (Am. Compl. ¶¶ 157-59, ECF No. 14.) Each plaintiffs' allegations follow the same general pattern.  Plaintiffs purchased BMW vehicles in the Maryland-Delaware-Virginia tristate area between 2010 and 2015.  (*Id.* ¶¶ 11, 20, 26, 35, 43, 50, 58, 67, 76, 85, 93, 101, 110.)  Most of the plaintiffs purchased used BMWs; a minority bought them new.  (*Id.*)  All the vehicles were equipped with the N63 engine.  (*Id.* ¶ 131.)  All Plaintiffs relied on Defendant's representations made in its New Vehicle Limited

---

[2] Counsel for the plaintiffs has filed numerous lawsuits in other jurisdictions in the wake of *Bang*. *See Grover et al v. BMW of N. Am., LLC et al*, No. 1:19-cv-00012-SL, 2020 WL 348653 (N.D. Oh. Jan. 21, 2020); *O'Connor et al v. BMW of N. Am., LLC et al*, No. 1:18-cv-03190 (D. Co. Jan. 7, 2020); *Loy et al v. BMW of N. Am., LLC et al*, 4:19-cv-00184-JAR, 2019 WL 6250844(E.D. Mo. Nov. 22, 2019); *Bryant, et al v. BMW of N. Am., LLC*, No. 2:19-cv-00050-PP (E.D. Wis. Oct. 3, 2019); *Harris et al., v. BMW of N. Am., LLC*, 4:19-cv-00016-ALM, 2019 WL 4861379 (E.D. Tex. Oct. 2, 2019); *Schneider et al. v. BMW of N. Am., LLC*, No: 1:18-cv-12239-IT, 2019 WL 4771567 (D. Mass. Sept. 27, 2019); *Carroll v. BMW of N. Am., LLC*, 1:19-cv-00224-JMS-TAB, 2019 WL 4243153 (S.D. Ind. Sept. 6, 2019); *Carroll v. BMW of N. Am., LLC*, 1:19-cv-00224-JMS-TAB, 2019 WL 2059619 (S.D. Ind. May 9, 2019); *Torres et al. v. BMW of N. Am., LLC,* No. 3:19-cv-00087-JD (N.D. Cal., Aug. 16, 2019).  These authorities were presented to the Court by way of six Notices of Supplemental Authority (ECF Nos. 28, 32, 34, 36, 38, 40.)  Defendant objects to the filing of these notices.  The objection is overruled, as nothing prevents this Court from consulting persuasive legal authorities.  *See Chambers v. King Buick GMC, LLC*, 43 F. Supp. 3d 575, 585 n.4 (D. Md. 2014) ("Granting Defendants' motion to strike would not preclude the court from applying any existing precedent or considering any other authority.").

Warranty, which promised repairs or replacements during a specified warranty period. (*Id.* ¶ 122.)

After buying their vehicles, plaintiffs discovered that they consumed an excessive amount of engine oil, requiring them to add engine oil several times between BMW's recommended oil change intervals. (*Id.* ¶¶ 13, 21, 28, 37, 45, 52, 60, 69, 78, 87, 95, 103, 112.) When they complained to authorized BMW dealership about the engine oil consumption, dealership employees told them that the oil consumption was "normal" or that "the type of engine you have, as you get more miles on it, it does this." (*Id.* ¶¶ 23, 30, 39, 46, 54, 62, 72, 89, 97, 105.) The BMW dealerships either did not repair the vehicles or made only limited repairs which did not resolve the problem. All Plaintiffs have paid out-of-pocket costs to supplement their engine's oil and some have paid for repairs. (*Id.* ¶ 33, 56, 65, 74, 91, 99, 108, 118.)

Plaintiffs contend that the excessive oil consumption is the product of "one or more defects" afflicting BMW's N63 engines. (*Id.* ¶ 212.) The N63 engine is a V8, twin-turbocharged engine placed in certain BMW 5 Series, 6 Series, 7 Series, X5, and X6 vehicles from the 2009 through 2014 model years. (*Id.* ¶ 129.) The engine' excessive consumption of engine oil is well known among car enthusiasts and BMW owners. (*Id.* ¶ 132.) Knowledge of the problem was widespread as of late 2011. (*Id.* ¶ 139-140.) Some theorize that the oil consumption problem is the result of the engine's unique configuration. (*Id.* ¶ 133.)

Plaintiffs allege that BMW tried to conceal the problem by issuing a series of technical service bulletins ("TSB") discussing the engine oil consumption of N63 engines but failing to

acknowledge that the engine was defective. In a TSB issued in June 2013, BMW increased the engine oil consumption specifications for N63 engines and directed service technicians to add more engine oil during oil changes. (*Id.* ¶ 145.) Another TSB indicated that "[t]he additional engine oil consumption of a turbocharged engine, as compared to a normally aspirated engine, is normal and not a defect." (*Id.* ¶ 147.) On December 29, 2014, BMW launched a "customer care package" which, among other things, instructed BMW technicians to offer free replacements of various components within the N63 engine and adjusted the recommended intervals between oil changes. (*Id.* ¶¶ 152-154.)

On September 18, 2015, a class action lawsuit was filed in the United States District Court for the District of New Jersey which made allegations similar to those presented in this case. *See Bang v. BMW of N. Am., LLC*, No. CV 15-6945, 2016 WL 7042071 (D.N.J. Dec. 1, 2016). The *Bang* class action resulted in a settlement. The plaintiffs in this case opted out of the *Bang* class action and filed suit in this Court on November 26, 2018. (ECF No. 1.) An Amended Complaint followed on February 13, 2019. (ECF No. 14.) The Amended Complaint brings four causes of action: Breach of Warranty Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (Count I); Breach of Implied Warranty of Merchantability Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* and Md. Code Ann., Com. Law, § 2-314 (Count II); Breach of Express Warranty Pursuant to the Md. Code Ann., Com. Law, § 2-313 (Count III); Unfair and Deceptive Trade Practices Md. Code Ann., Com. Law, § 13-301, *et seq.* (Count IV). BMW NA has moved to dismiss Plaintiffs' claims for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6), or, alternatively, for Summary Judgment under

Fed. R. Civ. P. 56. (ECF No. 21.) Should this Court deny these motions, BMW NA petitions this Court to sever the plaintiffs' claims under Fed. R. Civ. P. 21 so that each of the thirteen plaintiffs would be required to pursue this matter individually.

## STANDARD OF REVIEW

### I. Motion to Dismiss, or, in the Alternative, for Summary Judgment.

Defendant BMW NA moves to dismiss Plaintiffs' claims or, in the alternative, for summary judgment. To support its summary judgment motion, Defendant has attached several exhibits pertaining to Plaintiffs' warranty claims, including the warranties issued to each plaintiff and several Carfax vehicle history reports. A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." *Sager v. Hous. Com'n of Anne Arundel Cty.*, 855 F. Supp. 2d 524, 542 (D. Md. 2012) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2011 Supp.). This Court declines to consider these filings because summary judgment would be inappropriate at this early stage.

### II. Motion to Dismiss for Lack of Subject Matter Jurisdiction.

BMW NA has moved to dismiss for lack of subject matter jurisdiction, arguing that Plaintiffs have failed to satisfy the amount-in-controversy requirement applicable to their Magnuson-Moss Warranty Act claims. A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a complaint. *See Davis v. Thompson*, 367 F.Supp.2d 792, 799 (D.

Md. 2005). A challenge to jurisdiction under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted). In a facial challenge, a court will grant a motion to dismiss for lack of subject matter jurisdiction "where a claim fails to allege facts upon which the court may base jurisdiction." *Davis*, 367 F. Supp. 2d at 799. Where the challenge is factual, however, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192. The court, therefore, "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 650 (4th Cir. 2018).

## III. Motion to Dismiss for Failure to State a Claim.

BMW NA also seeks dismissal of Count IV of the Amended Complaint, which alleges violations of the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-301, *et seq.* Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006); *see also Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). The sufficiency of a complaint is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must

contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). "At the motion to dismiss stage, we accept as true all of the well-pleaded allegations and view the complaint in the light most favorable to [Plaintiff]." *Quintana v. City of Alexandria, et al.*, 692 F. App'x 122, 125 (4th Cir. June 6, 2017) (citing *LeSeur-Richmond Slate Corp. v. Fehrer*, 666 F.3d 261, 264 (4th Cir. 2012)). Nevertheless, while a court must accept as true all factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)).

When the gravamen of a complaint entails allegations of fraud, Rule 9(b) requires that "the circumstances constituting fraud be stated with particularity." *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D. Md. 2000). The rule "does not require the elucidation of every detail of the alleged fraud, but does require more than a bare assertion that such a cause of action exists." *Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1074 (D. Md. 1991). To satisfy the rule, the plaintiff must "identify with some precision the date, place and time of active misrepresentations or the circumstances of active concealments." *Johnson v. Wheeler*, 492 F.

Supp. 2d 492, 509 (D. Md. 2007). A court "should hesitate to dismiss a complaint under Rule 9(b) if [it] is satisfied (1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that [the] plaintiff has substantial prediscovery evidence of those facts." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

## IV. Motion to Sever.

Federal Rule of Civil Procedure 21 provides that a court may "sever any claim against a party." A district court has broad discretion in deciding whether to grant severance. *CVI/Beta Ventures, Inc. v. Custom Optical Frames, Inc.,* 896 F. Supp. 505, 506 (D. Md. 1995) (citing *United States v. O'Neill,* 709 F.2d 361, 369 (5th Cir. 1983)). Severance is usually only warranted in cases where the "claims do not arise out of the same transaction or occurrence or do not present some common question of law or fact." *Dotson v. Joseph,* 2006 U.S. Dist. LEXIS 57334, *3, 2006 WL 2400479 (W.D. Va. Aug. 16, 2006). This Court has recently recognized "a presumption in favor of the nonmoving party that all claims in a case will be resolved in a single trial and not be severed, placing the burden on the party moving for severance to show that (1) it will be severely prejudiced without a separate trial; and (2) the issue to be severed is so distinct and separable from the others that a trial of that issue alone may proceed without injustice." *Equal Rights Center v. Equity Residential,* 483 F. Supp. 2d 482, 489 (D. Md. 2007) (internal quotations omitted).

# ANALYSIS

## I.    Subject Matter Jurisdiction.

BMW NA argues that this Court lacks subject matter jurisdiction because Plaintiffs have failed to satisfy the $50,000.00 amount-in-controversy requirement of the Magnuson-Moss Warranty Act ("MMWA").  The Court's subject matter jurisdiction is a threshold issue which must be resolved before turning to the merits.  *Accident, Injury, & Rehabilitation, PC v. Azar*, 943 F.3d 195, 200 (4th Cir. 2019).  Accordingly, this Court first addresses Defendant BMW NA's subject matter jurisdiction challenge.

An MMWA claim will not be permitted in federal court "if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in [the] suit."  15 U.S.C. § 2310(d)(3)(B).  Plaintiffs may aggregate their claims to satisfy the $50,000 amount-in-controversy requirement set forth in § 2310(d)(3)(B), so long as their claims have been properly joined under Rule 20 of the Federal Rules of Civil Procedure.  *Saval v. BL Ltd.*, 710 F.2d 1027, 1030 (4th Cir. 1983).  To determine whether the amount-in-controversy requirement is satisfied under an aggregation theory, this Court must first determine whether the plaintiffs' claims are properly joined.

### A.  Propriety of Joinder.

Rule 20(a) imposes two specific requisites to the joinder of parties: (1) a right to relief must be asserted by, or against, each plaintiff or defendant relating to or arising out of the same transaction or occurrence; and (2) some question of law or fact common to all the parties will arise in the action.  Both of these requirements must be satisfied in order to sustain party

joinder under Rule 20(a). 7 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice & Procedure* § 1653 (3d ed. 2001). The United States Court of Appeals for the Fourth Circuit has held that the "transaction or occurrence" requirement "permit[s] all reasonably related claims for relief by or against different parties to be tried in a single proceeding." *Saval*, 710 F.2d at 1031. (citation omitted). "Further, the rule must be construed in light of its purpose, which is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Id.* (internal quotation marks and citation omitted). The district court is granted "wide discretion" to determine whether joinder is appropriate in a given case. *Aleman v. Chugach Support Services, Inc.*, 485 F.3d 206, 218 n.5 (4th Cir. 2007).

In this case, Plaintiff's claims arise out of the same transaction or occurrence because they concern the same oil consumption problem associated with the same defective N63 engines and BMW's alleged failure to remedy this defect in breach of the same warranty. Each plaintiff is alleged to have made their vehicle purchase in reliance on BMW's New Vehicle Limited Warranty, which promised repairs or replacements during a specified warranty period. The plaintiffs' vehicles all contained the same allegedly defective N63 engine. After making their purchases, each plaintiff noticed that their vehicle consumed an abnormal amount of engine oil. In response to their complaints about this promise, BMW's authorized dealers allegedly provided similar responses—for example, representing that the oil consumption was "normal." BMW NA is alleged to have made uniform communications about how to address the oil consumption issues affecting the N63 engines and made false representations in these statements. There are certainly differences among Plaintiffs' claims. For example, the

plaintiffs purchased different cars at different times and from different dealers. Nevertheless, each of the plaintiffs' claims all arise from common occurrence—BMW NA's alleged concealment of an engine defect and failure to remedy that defect. These commonalities render joinder appropriate. It would be a tremendous waste of judicial resources to sunder this case into thirteen pieces, and perhaps eventually empanel thirteen juries, to resolve claims sharing such a similar factual nexus.

Relying on *Saval*, BMW NA argues that plaintiffs' claims do not arise from the same "transaction or occurrence" because the plaintiffs' claims will require a "fact-specific analysis" unique to each plaintiff. (ECF No. 21-1 at 50.) In *Saval*, four plaintiffs alleged that a cooling system defect produced six classes of problems with their Jaguar automobiles, including fluid leakage, engine overheating, and malfunctioning electrical systems. *Saval*, 710 F.2d at 1029. The plaintiffs brought claims under the Magnuson-Moss Warranty Act and other causes of action. *Id.* This Court dismissed their claims, holding that plaintiff-appellants had been improperly joined and, accordingly, could not aggregate their claims to satisfy the MMWA's amount-in-controversy requirement. *Id.* at 1031. This Court reasoned that joinder was not appropriate because each of the vehicles presented "unique histories" and the plaintiffs had failed to establish that the various problems affecting their vehicles stemmed from the same defect. *Id.* at 1031.

The Fourth Circuit affirmed, holding that the trial court had not abused its discretion. Specifically, the Fourth Circuit held that the alleged "six classes of defects" disparately impacting the plaintiff's automobiles justified the lower court's ruling. *Id.* at 1032 n.5. In reaching its decision, the *Saval* court specifically noted that it "express[ed] no opinion as to

whether *allowing* joinder under these facts would have been within [the district court's] discretion." *Id.* at 1032 n.6. The Fourth Circuit has subsequently re-iterated that the *Saval* Court merely held that the district court did not abuse its discretion, but emphatically did not hold that joinder would have been inappropriate under the circumstances presented. *Hinson v. Norwest Financial South Carolina, Inc.*, 239 F.3d 611, 618 (4th Cir. 2001.)

As *Hinson* explained, *Saval*'s procedural posture renders it of somewhat limited relevance. Nevertheless, *Saval* would not mandate severance no matter its precise posture. The *Saval* court emphasized that the "six classes of defects" which the plaintiffs identified were central to the case, and these disparate problems rendered the case unsuitable for joinder. In this case, only one defect is alleged—the fast loss of engine oil—and this defect afflicts a specific type of engine present in all of the plaintiffs' vehicles. This commonality, in addition to those identified *supra*, warrants joinder.[3]

## B. Aggregation of Plaintiffs' Claims.

Having concluded that the plaintiffs are properly joined, this Court next must determine whether their aggregated claims satisfy the $50,000 amount-in-controversy requirement. The amount sought in the plaintiff's Complaint ordinarily determines the amount in controversy, so long as the plaintiff has advanced the figure in good faith. *Lanier v. Norfolk Southern Corp.*, 256 F. App'x 629, 631-32 (4th Cir. 2007) (citing *Wiggins v. North Am. Equitable Life Assur. Co.*, 644 F.2d 1014, 1016-17 (4th Cir. 1981)). Only "if it appears to a legal certainty" that the amount has not been satisfied may the case be dismissed. *Id.* This is difficult

---

[3] Accordingly, this Court DENIES BMW-NA's Motion to Sever (ECF No. 21).

to demonstrate. "[T]he legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim." *Id.*

The parties agree that the damages available under the Magnuson-Moss Warranty Act are determined by reference to Maryland state warranty law. *See Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 291 (4th Cir. 1989). Under Maryland law, breach of warranty claims permit damages in the form of the cost of repair to bring the vehicle in conformance with the warranty, or the diminution in value of vehicle as a result of its defects. *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 160, 916 A.2d 257, 287 (2007). Where the plaintiff has elected not to repair the vehicle, but to use it in a defective condition, damages may be measured based on an estimated cost of repair. *Id.* (citation omitted).

In this case, the total cost of repair alleged by the plaintiffs exceeds the $50,000 amount-in-controversy requirement. Several plaintiffs are alleged to have expended out-of-pocket costs and repairs to remedy the oil consumption defect. Rutherford is alleged to have paid $7,800 (Am. Compl. ¶ 33); Berraoui $1,475 (*Id.* ¶ 56); Swann $1,400 (*Id.* ¶ 65), Inghram $625 (*Id.* ¶ 74); Morgan $25,000 (*Id.* ¶ 91); Chepkwony $34,722.77 (*Id.* ¶ 99); Lee $2,000 (*Id.* ¶ 108); and Daniels $500 (*Id.* ¶ 118). These figures alone put the plaintiffs over the $50,000 threshold.[4] Accepting these allegations as true, and drawing all inferences in favor of the remaining plaintiffs, it may be assumed for present purposes that the remaining plaintiffs would need to incur similar expenses to repair their vehicles. Accordingly, the plaintiffs' allegations satisfy

---

[4] BMW NA argues that these expenses were either related to the repair of unrelated mechanical problems or limited to the purchase of additional engine oil. (ECF No. 21-1 at 59.) The Amended Complaint, however, alleges that these costs were associated with repairs to remedy the oil consumption defect, and this Court must accept those allegations as true at this stage.

the MMWA's amount-in-controversy requirement and this Court may exercise jurisdiction over this case.[5]

## II. Adequacy of Maryland Consumer Protection Act Claims.

Defendant BMW NA argues that Plaintiffs have failed to state a claim under the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-301, *et seq.* (Count IV) because they have not adequately alleged fraud with the specificity required by Fed. R. Civ. P. 9(b).[6] More specifically, BMW NA argues that (1) plaintiffs have failed to allege any basis for attributing the statements made by dealership employees to BMA NA; and (2) that the statements made by the dealership employees were not false or misleading.

The purpose of the MCPA is to protect consumers from unfair or deceptive trade practices, *Butler v. S & S Partnership*, 435 Md. 635, 666, 80 A.3d 298 (2013), by setting minimum statewide standards for the protection of consumers. Md. Code Ann., Com. Law § 13-102(b)(1). To state a claim under the MCPA, plaintiffs must allege that the defendant's conduct was "(1) an unfair or deceptive practice or misrepresentation that [was] (2) relied upon, and (3) cause[d] them actual injury." *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012) (*citing Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 140, 916 A.2d 257 (2007). An MCPA

---

[5] Having established a basis for original jurisdiction under 28 U.S.C. § 1331, this Court may take supplemental jurisdiction over Plaintiffs' remaining state law claims pursuant to 28 U.S.C. § 1441(c). *See Parran's Flooring Center, Inc. v. Ford Motor Co.*, DKC-11-1151, 2011 WL 5974617 (D. Md. Nov. 28, 2011) (accepting supplemental jurisdiction over plaintiffs' state law claims after establishing jurisdiction under the Magnuson-Moss Warranty Act).

[6] BMW NA does not argue that Plaintiffs have failed to adequately plead Breach of Warranty Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (Count I); Breach of Implied Warranty of Merchantability Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* and Md. Code Ann., Com. Law § 2-314 (Count II); or Breach of Express Warranty Pursuant to the Md. Code Ann., Com. Law § 2-313 (Count III). This Court finds that Plaintiffs have adequately pled the claims brought under those Counts.

claim "sounds in fraud," and must be pleaded with particularity. Fed. R. Civ. P. 9(b); *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 777 (4th Cir. 2013).

To satisfy Rule 9(b), the plaintiffs must plead "the time, place, and contents of the false representations as well as the identity of the person making the misrepresentation and what he obtained thereby." *Edmonson v. Eagle National Bank*, 922 F.3d 535, 553 (4th Cir. 2019) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)). "When an agency relationship is allegedly part of the fraud, the circumstances constituting fraud on the part of the purported principal" must be pled in accordance with Rule 9(b) and "include both the facts constituting the underlying fraud and the facts establishing the agency relationship." *Adobe Sys. Inc. v. Gardiner*, 300 F. Supp. 3d 718, 730 (D. Md. 2018) (quoting *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D. Md. 2000)).

In this case, plaintiffs have sufficiently pled fraudulent misrepresentations. Each plaintiff identifies the approximate time during which they visited an authorized BMW dealership and the statements made to them by the dealer. Many of these dealers indicated that the plaintiff's engine problems were "normal," but did not indicate that the engine was defective. Such representations admit of both innocent and sinister interpretations. At this stage, however, plaintiffs have sufficiently alleged that the BMW dealers were deliberately concealing a known defect affecting N63 engines by indicating that the excessive oil consumption was unremarkable.

Plaintiffs have also adequately described the purported agency relationship giving rise to BMW NA's liability. An agency relationship requires the "manifestation of the principal to

the agent that that the agent will act on the principal's behalf" *Adobe Sys.*, 300 F. Supp. 3d at 729 (quoting *Jackson v. 2109 Brandywine, LLC*, 180 Md. App. 535, 565, 952 A.2d 304 (2008)). Maryland has identified three characteristics that are particularly relevant to the existence of an agency relationship: "(1) the agent's power to alter the legal relations of the principal; (2) the agent's duty to act primarily for the benefit of the principal; and (3) the principal's right to control the agent." *Danner v. Int'l Freight Sys. Of Wa., LLC*, 855 F. Supp. 2d 433, 454 (D. Md. 2012) (citing *Green v. H&R Block, Inc.*, 355 Md. 488, 503 (1999)). These are not mandatory elements: the Court of Appeals of Maryland has characterized them as guiding considerations that "should be viewed within the context of the entire circumstances of the transaction or relations." *Green*, 355 Md. at 506; *see also Costley v. Serv. Prot. Advisors, LLC*, JKB-12-1574, 2013 WL 952237, at *4 (D. Md. 2013).

In this case, the plaintiffs have adequately described the nature of the agency relationship between BMW NA and their authorized dealerships. The dealerships are alleged to have "expressly assented to perform warranty repairs" in order to uphold BMW NA's compliance with its express warranty. (Am. Compl. ¶ 123.) BMW NA allegedly "provides special tools, diagnostic software, and replacement parts to its dealers, and demands that the warranty repairs be performed in strict accordance with its repair guidelines." (*Id.* ¶ 124.) The Amended Complaint provides several specific examples of communications made by BMW NA to its dealerships which were allegedly part of a broader effort to conceal the N63 engine's defect. (*Id.* ¶¶ 143, 147.) In return for their repair services, BMW NA allegedly paid the dealerships. (*Id.* ¶ 125.)

Defendants appeal to *Mercedes-Benz of N. Am., Inc. v. Garten*, 94 Md. App. 547, 618 A.2d 233 (1993) to support the broad proposition that the statements of dealership employees may not be attributed to a "remote manufacturer or distributor" like BMW NA. (ECF No. 21-1 at 45.) This overstates the holding of *Mercedes-Benz*. In *Mercedes-Benz*, plaintiff complained that a car salesman employed by Valley Motors, a car dealership, had made certain misrepresentations about a particular Mercedes-Benz vehicle during the course of sales negotiations. *Id.* 552-54. The trial court determined that the salesman was acting as the agent of Mercedes-Benz of North America ("Mercedes-Benz NA") and that his statements could be attributable to it. *Id.* at 554. The Maryland Court of Appeals reversed. After reviewing the record, the Court determined that Mercedes-Benz NA had an extremely tenuous relationship with the Valley Motors salesman. Of note, Mercedes-Benz NA "exerted no control over Valley Motors with respect to its sales and promotion of the vehicles" and Mercedez-Benz NA "did not direct Valley Motors employees to discuss certain characteristics of the automobiles" nor "to withhold certain information." *Id.* at 558. Ultimately, the Court concluded that "[n]ot one element of an actual agency relationship [could] be found in the record." *Id.*

Plaintiffs allege a much closer connection between BMW NA and the various dealerships mentioned in the Amended Complaint, and this close connection suffices to establish an agency relationship. Unlike in *Mercedez-Benz*, BMW NA is alleged to have exerted a high degree of control over the dealerships' review of warranty claims and execution of repairs by, for example, issuing technical service bulletins which provided guidance concerning the management of oil consumption problems. The Amended Complaint describes a

coordinated effort between BMW NA and its dealerships to conceal the defect associated with the N63 engine and disguise the engine's excessive oil consumption as an ordinary feature. Accepting these allegations as true, Plaintiffs may attribute the statements of the dealership employees to BMW NA.

## III.    Statute of Limitations Defense.

Defendant BMW NA seeks dismissal of Plaintiffs' claims based on an affirmative defense: the applicable statute of limitations. A court may resolve a statute of limitations defense at the motion to dismiss stage only if "all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (quoting *Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)). Plaintiffs' Maryland Consumer Protection Act claims are subject to a three-year statute of limitations. Md. Code Ann., Cts. & Jud. Proc. § 5-501. The Magnuson-Moss Warranty Act does not contain a statute of limitations. Faced with a federal statute without a specified limitations period, federal courts apply the limitations period of an analogous state law. *Innovative Sports Mgmt., Inc. v. 3508 Eastern LLC*, MJG-11-3268, 2012 WL 6563378, at *2 (D. Md. Dec. 13, 2012) (citing *North Star Steel Co. v. Thomas*, 515 U.S. 29, 33-34, 115 S. Ct. 1927 (1995)).

The MMWA supplements state law by supplying a federal cause of action for warranty violations. *Wolf v. Ford Motor Co.*, 829 F.3d 1277, 1278 (4th Cir. 1987). Accordingly, courts adjudicating MMWA claims apply the limitations period applicable to state law breach of warranty claims. *See, e.g.*, *Ferro v. Volvo Penta of the Americas, LLC*, 731 F. App'x 208, 210 (4th

Cir. 2018) (applying four-year statute of limitations applicable under North Carolina law claims for breach of warranty to Magnuson-Moss Warranty Act claims); *Carroll v. BMW of N. Am., LLC*, No. 1:19-cv-000224-JMS-TAB, 2019 WL 4243153, at *7 (D. Ind. Sept. 6, 2019) (applying Indiana law).

In this case, the four-year statute of limitations applicable to Maryland breach of warranty claims govern. Md. Code Ann., Com. Law § 2-725(1). A breach of warranty claim accrues "when tender of delivery is made." § 2-725(2). In response to BMW NA's claim that this limitations period has already elapsed, Plaintiffs contend that they are entitled to tolling of the statute of limitations based on fraudulent concealment, equitable tolling, and class action tolling.[7]

BMW NA's alleged fraudulent concealment presents a particularly salient reason to refrain from dismissing these claims based on a statute of limitations defense. Under Maryland law, "[i]f the knowledge of a cause of action is kept from a party by the fraud of an adverse party, the cause of action shall be deemed to accrue at the time when the party discovered, or by the exercise of ordinary diligence should have discovered the fraud." Md. Code Ann., Cts. & Jud. Proc. § 5–203. The Fourth Circuit has adopted a similar fraudulent concealment test. To defeat a limitations defense based on fraudulent concealment under Fourth Circuit case law, "a plaintiff must demonstrate: (1) the party pleading the statute of limitations fraudulently concealed facts that are the basis of the plaintiff's claim, and (2) the plaintiff failed to discover

---

[7] Plaintiffs' Response in Opposition to the Defendant's Motion does not mention the "discovery rule," a tolling theory which was invoked by the Amended Complaint and discussed at length in the Defendant's Motion.

those facts within the statutory period, despite (3) the exercise of due diligence." *Edmonson*, 922 F.3d at 548 (quoting *Supermarket of Marlinton, Inc. v. Meadow Gold Diaries, Inc.*, 71 F.3d 119, 122 (4th Cir. 1995)). This Court is mindful of the Fourth Circuit's admonition that claims of fraudulent concealment are often inappropriate for resolution on a 12(b)(6) motion because they require resolution of factual disputes. *Edmonson*, 922 F.3d at 554-56 (determining that record was insufficient to conclude that plaintiffs had inquiry notice of their claims under the Real Estate Settlement Procedures Act, 12 U.S.C. § 12601, *et seq.*, despite widespread publication of the underlying facts giving rise to the cause of action).

In this case, Plaintiffs have adequately alleged fraudulent concealment. As previously explained, Plaintiffs have sufficiently alleged that BMW dealership representatives fraudulently concealed the nature of the N63 engine defect and these statements are attributable to the BMW NA. The precise time period during which Plaintiffs learned of the N63 engine defect and the degree to which they exercised due diligence involves issues of fact ill-suited for resolution at this stage. Although the Plaintiffs themselves allege that discussion of the N63 engine was a "hot topic" in certain sectors of the internet as early as 2011 (Am. Compl. ¶ 140), the Court cannot conclude at this early stage that Plaintiffs were knowledgeable of, or even had access to, such discussions or other information which would lead them to believe that their engines had a defect. Accordingly, BMW NA's statute of limitations defense cannot bar Plaintiffs' claims at this stage.[8]

_____

[8] Additionally, Plaintiffs have adequately pled their entitlement to class action tolling. Under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 554, 94 S. Ct. 756 (1974), "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." Maryland has adopted the *American Pipe* class action tolling doctrine. *Phillip Morris USA, Inc. v. Christensen*, 349 Md. 227, 253, 905 A.2d 340 (Md. 2006). This

## CONCLUSION

For the reasons stated above, BMW of North America, LLC's Motion to Dismiss Amended Complaint or for Summary Judgment and to Sever Claims of Misjoined Plaintiffs (ECF No. 21) is DENIED.

A separate Order follows.

Dated: March 27, 2020

_____/s/_____
Richard D. Bennett
United States District Judge

---

case involves "cross-jurisdictional" class action tolling, whereby this Court would engage in equitable tolling during the pendency of a class action in another court, the District of New Jersey. *See Wade v. Danek Medical, Inc.*, 182 F.3d 281, 287 (4th Cir. 1999). Maryland's highest court has expressly declined to decide whether it would adopt cross-jurisdictional class action tolling. *Phillip Morris*, 349 Md. at 255 n.9, 905 A.2d 340. Although the Maryland Court of Special Appeals has recently declined to apply the doctrine, *see Adedje v. Westat, Inc.*, 214 Md. App. 1, 75 A.3d 401 (2013), that ruling concerned a collective action under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*,, not a class action. *Cf. Pohutsky v. Pella Corp.*, 2015 WL 2379496, at *5 (D.S.C. May 19, 2015) (finding that Maryland does not recognize cross-jurisdictional class action tolling). Furthermore, Judge Quarles of this Court has previously held that Maryland "has adopted *American Pipe* and its progeny." *Mitchell Tracey v. First American Title Ins. Co.*, 935 F. Supp. 2d 826, 840 (D. Md. 2013). Consistent with this precedent, and mindful that *Adedje* concerned the tolling of collective actions, not class actions, this Court finds that cross-jurisdictional class action tolling applies in this case. Further discovery will elucidate its precise application to each plaintiff, if necessary.