UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| KELLY RUTHERFORD, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No.: RDB-18-3618 |
| BMW OF NORTH AMERICA, LLC, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM OPINION

In this case, eight Plaintiffs[1] ("Plaintiffs") bring fraud and warranty-based claims against BMW of North America, LLC ("BMW NA" or "Defendant") arising from BMW's allegedly defective N63 engines. Plaintiffs' Amended Complaint brings four causes of action: Breach of Warranty Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (Count I); Breach of Implied Warranty of Merchantability Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* and Md. Code Ann., Com. Law § 2-314 (Count II); Breach of Express Warranty Pursuant to the Md. Code Ann., Com. Law § 2-313 (Count III); Unfair and Deceptive Trade Practices Md Code Ann., Com. Law, § 13-301, *et seq* ("Maryland Consumer Protection Act"). (Count IV).

Plaintiffs commenced this action on November 26, 2018 after opting out of a nationwide class action, *Bang v. BMW of N. Am. LLC*, No. CV 15-6945 (D.N.J.). Since the

---

[1] The Plaintiffs are Kelly Rutherford, Sharon Inghram, John Michael Albert, Aziz Berraoui, Rita Clinton, Kevin Daniels, Loran Morgan, and Kathy Swan.

settlement of the *Bang* action, scores of opt-out plaintiffs have filed lawsuits against BMW across the country.[2] Presently pending before this Court are BMW of North America, LLC's Motion for Summary Judgment (ECF No. 95) and Plaintiffs' Cross-Motion for Summary Judgment (ECF No. 108). This Court has reviewed the parties' submissions and heard the arguments of counsel at a telephonic motions hearing on January 3, 2022.[3] For the reasons stated below, BMW NA's Motion for Summary Judgment (ECF No. 95) is GRANTED IN PART AND DENIED IN PART. Specifically, it is GRANTED with respect to the claims of Plaintiffs Rutherford, Inghram, Daniels, and Morgan as to all four counts, and is GRANTED as to the claims of Albert, Berraoui, Clinton, and Swan on Count IV. The Motion is DENIED with respect to the breach of warranty claims of Plaintiffs Albert, Berraoui, Clinton, and Swan asserted in Counts I, II, and III. Plaintiffs' Cross-Motion for Summary Judgment (ECF No. 108) is DENIED.

## BACKGROUND

In this case, Plaintiffs allege that BMW's N63 engines caused their BMW vehicles to consume an excessive amount of engine oil, requiring frequent replenishment of the oil, potentially damaging engine components, and posing a risk of injury. (Am. Compl. ¶¶ 157-59, ECF No. 14.) Plaintiffs allege that BMW tried to conceal the problem by issuing a series

---

[2] *See Grover et al v. BMW of North America, LLC et al*, No. 1:19-cv-00012-SL, 2020 WL 348653 (N.D. Oh. Jan. 21, 2020); *O'Connor et al v. BMW of North America, LLC et al*, No. 1:18-cv-03190 (D. Co. Jan. 7, 2020); *Loy et al v. BMW of North America, LLC et al*, 4:19-cv-00184-JAR, 2019 WL 6250844, at *1 (E.D. Mo. Nov. 22, 2019); *Bryant, et al v. BMW of North America, LLC*, No. 2:19-cv-00050-PP (E.D. Wis. Oct. 3, 2019); *Harris et al., v. BMW of North America, LLC*, 4:19-cv-00016-ALM, 2019 WL 4861379 (E.D. Tex. Oct. 2, 2019); *Schneider et al. v. BMW of North America, LLC*, No: 1:18-cv-12239-IT, 2019 WL 4771567 (D. Mass. Sept. 27, 2019); *Carroll v. BMW of North America, LLC*, 1:19-cv-00224-JMS-TAB, 2019 WL 4243153 (S.D. Ind. Sept. 6, 2019); *Carroll v. BMW of North America, LLC*, 1:19-cv-00224-JMS-TAB, 2019 WL 2059619 (S.D. Ind. May 9, 2019); *Torres et al. v. BMW of North America, LLC,* No. 3:19-cv-00087-JD (N.D. Cal., Aug. 16, 2019).
[3] *See* Standing Order No. 2021-15, Misc. No. 1:00-mc-00308 (D. Md. Dec. 22., 2021), ECF No. 142.

of technical service bulletins ("TSB") discussing the engine oil consumption of N63 engines but failing to acknowledge that the engine was defective.

On November 10, 2010, Plaintiff Kelly Ann Rutherford purchased a used 2009 BMW 7-series from certified BMW dealer Russel Automotive, in Baltimore, Maryland. (ECF No. 108-1 at 5.) At the time of the sale, Rutherford's vehicle was covered by the remainder of BMW's New Vehicle Limited Warranty ("NVLW"), which accompanied the original sale of the vehicle on March 10, 2009. Under the NVLW, BMW was to repair or replace components of the vehicle that were found to be defective in material or workmanship. (*Id.* at 5-6.) The NVLW would expire upon the vehicle's odometer reaching 50,000 miles or on March, 10, 2013, whichever occurred first. (*Id.* at 6.) Rutherford recalls that soon after having purchased her vehicle, the low oil light would frequently display. She and her husband made complaints to the dealership about the vehicle's consumption of oil. (*Id.*)

On April 2, 2011, Plaintiff Sharon Inghram purchased a certified-preowned 2010 BMW 7-series from BMW of Fairfax in Fairfax, Virginia, an authorized BMW dealer. (*Id.* at 7-8.) At the time of the sale, the vehicle was covered by the remainder of BMW's NVLW which accompanied the original sale of the vehicle on October 22, 2009. On July 13, 2010, BMW issued a Certified Pre-Owned Limited Warranty ("CPOW") for Inghram's vehicle. The NWLW would expire upon the vehicle's odometer reaching 50,000 miles or on October 22, 2013, whichever occurred first. (*Id.*) The CPOW would expire upon the vehicle's odometer reaching 100,000 miles or on October 22, 2015, whichever occurred first. (*Id.* at 8.) Approximately two and a half years after purchasing her vehicle, Inghram noticed that the

vehicle was consuming oil at a fast rate. She took the vehicle to Russel Automotive on or about October 13, 2013 to report that the low oil indicator would frequently display. (*Id.*)

On December 22, 2012, Plaintiff John Michael Albert purchased a new 2013 BMW 7-series from BMW of Alexandria in Alexandria, Virginia, an authorized BMW dealer. (*Id.* at 9.) At the time of the sale, Albert's vehicle was covered by BMW's NVLW. The NVLW would expire upon the vehicle's odometer reaching 50,000 miles or on December 22, 2016, whichever occurred first. (*Id.*) In August 2014, at the vehicle's first oil change, Albert complained to BMW service representatives of both BMW of Alexandria and BMW of Annapolis about the vehicle's oil consumption. Each time he complained, he was told that the oil consumption level was normal for his car. (*Id.*)

On May 20, 2013, Plaintiff Aziz Berraoui purchased a used 2013 BMW X6-series from Russel Automotive, an authorized BMW dealership located in Baltimore, Maryland. (*Id.* at 10.) At the time of sale, the Berraoui's vehicle was covered by the remainder of BMW's NVLW, which accompanied the original vehicle sale on August 25, 2012. The NVLW would expire upon the vehicle's odometer reaching 50,000 miles or on August 25, 2016, whichever occurred first. (*Id.*) Less than one month after the purchase of the vehicle, Berraoui noticed that the low oil light began to display. He complained to the dealership and was advised to add a quart of oil to the car. He was also advised that the rate of consumption was due to the type of engine in the car. (*Id.* at 10-11.)

On May 5, 2012, Plaintiff Rita Clinton purchased a new 2012 BMW 7-series from Passport BMW in Marlow Heights, Maryland, an authorized BMW dealer. (*Id.* at 11-12.) At the time of sale, the Clinton Vehicle was covered by BMW's NVLW. The NVLW would

4

expire upon the vehicle's odometer reaching 50,000 miles or on May 5, 2016, whichever occurred first. Clinton noticed that the low oil light in her vehicle displayed frequently. (*Id.* at 12.) Six months after purchasing the vehicle, Clinton's husband took the vehicle to Passport BMW for service to address the low oil light. As the rate of oil consumption became faster, BMW service technicians reassured Clinton that the rate of consumption was normal for her vehicle, which was equipped with a high-performance engine. (*Id.* at 12.)

On February 29, 2012, Plaintiff Kevin Daniels purchased a used 2009 BMW 7-series from BMW of Alexandria in Alexandria, Virginia, an authorized BMW dealer. (*Id.* at 13.) At the time of purchase, the Daniels Vehicle was covered by the remainder of BMW's NVLW, which accompanied the original vehicle sale on May 29, 2009. The NVLW would expire upon the vehicle's odometer reaching 50,000 miles or on May 29, 2013, whichever occurred first. (*Id.* at 13-14.) Within months of purchasing his vehicle, Daniels observed that his low oil light would display frequently, and he would have to add oil to the engine. By February 2015, Daniels was adding two to four quarts of oil to his vehicle every month. BMW service representative explained to Daniels that it was normal for his car to consume oil in such quantities. (*Id.* at 14.)

On September 14, 2013, Plaintiff Loran Morgan purchased a used 2010 BMW 7-series from Mile One Tischer Auto Park in Silver Spring, Maryland, an authorized BMW dealership. (*Id.* at 14-15.) At the time of sale, the Morgan's vehicle was covered by the remainder of BMW's NVLW, which accompanied the original vehicle sale on December 22, 2009. On September 2, 2013, BMW issued a CPOW for Morgan's vehicle. The NVLW would expire upon the vehicle's odometer reaching 50,000 miles or on December 22, 2013,

whichever occurred first. The CPOW would expire upon the vehicle's odometer reaching 100,000 miles or on December 22, 2015, whichever occurred first. (*Id.*) At the early stages of ownership of the vehicle, Morgan was adding two quarts of oil to the engine approximately once every month. When he asked BMW service representatives about why his car was consuming so much engine oil, he was told that the rate of consumption was normal that type of engine. (*Id.* at 15.)

Finally, on October 10, 2015, Plaintiff Kathy Swann purchased a certified pre-owned BMW 2012 X5-series from I.G. Burton BMW in Milford, Delaware, an authorized BMW dealer. (*Id.* at 16.) At the time of sale, the vehicle was covered by the remainder of BMW's NVLW, which accompanied the original vehicle sale on August 21, 2012. Later, on September 14, 2015, BMW issued a CPOW for the vehicle. The NVLW would expire upon the vehicle's odometer reaching 50,000 miles or on August 21, 2016, whichever occurred first. The CPOW would expire upon the vehicle's odometer reaching 100,000 miles or on August 21, 2018, whichever occurred first. (*Id.* at 16-17.) Within months of purchasing the vehicle, Swann took it to the dealership because the low oil indicator had appeared. A service technician explained that because the engine in her vehicle was a V-8, she would be required to add oil in between oil changes and represented that it was normal for such engines to burn more oil. (*Id.* at 17.)

Plaintiffs claim that they did not learn of or suspect a defect in their vehicles' engines until after they received notice of the *Bang* class action. *See Bang v. BMW of N. Am. LLC*, No. CV 15-6945 (D.N.J.). All Plaintiffs had opted out of the Bang class action as of August 30, 2018. (ECF No. 108-1 at 35.) On November 26, 2018, Plaintiffs filed suit in this Court

6

alleging four causes of action against BMW NA: Breach of Warranty Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (Count I); Breach of Implied Warranty of Merchantability Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* and Md. Code Ann., Com. Law, § 2-314 (Count II); Breach of Express Warranty Pursuant to the Md. Code Ann., Com. Law, § 2-313 (Count III); Unfair and Deceptive Trade Practices Md. Code Ann., Com. Law, § 13-301, *et seq* ("Maryland Consumer Protection Act"). (Count IV). On March 27, 2020, this Court denied BMW NA's Motion to Dismiss the operative Amended Complaint. (ECF No. 42.) Both BMW NA and Plaintiffs have filed motions for summary judgment. (ECF Nos. 105, 108.) On January 3, 2022, this Court held a motions hearing at which it heard the arguments of counsel.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249. Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually

unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). This Court "must not weigh evidence or make credibility determinations." *Foster v. University of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs*, 780 F.3d at 569 (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866-68 (2014).

When both parties file motions for summary judgment, as here, this Court applies the same standard of review to both motions, considering "'each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law.'" *Defenders of Wildlife v. North Carolina Dept. of Transp.*, 762 F.3d 374, 392 (4th Cir. 2014) (quoting *Bacon v. City of Richmond, Va.*, 475 F.3d 633, 638 (4th Cir. 2007)). "[B]y the filing of a motion [for summary judgment,] a party concedes that no issue of fact exists under the theory he is advancing, but he does not thereby so concede that no issues remain in the event his adversary's theory is adopted." *Brown v. Perez*, 835 F.3d 1223, 1230 n.3 (10th Cir.

2016) (citation omitted); *see also Sherwood v. Washington Post*, 871 F.2d 1144, 1148 n.4 (D.C. Cir. 1989) ("[N]either party waives the right to a full trial on the merits by filing its own motion."). "However, when cross-motions for summary judgment demonstrate a basic agreement concerning what legal theories and material facts are dispositive, they '"may be probative of the non-existence of a factual dispute." *Syncrude Canada Ltd. v. Highland Consulting Group, Inc.*, 916 F. Supp. 2d 620 (D. Md. 2013) (quoting *Shook v. United States*, 713 F.2d 662, 665 (11th Cir. 1983)); *Georgia State Conference of NAACP v. Fayette County Bd. of Comm'rs*, 775 F.3d 1336, 1345 (11th Cir. 2015).

## ANALYSIS

Defendant moves for summary judgment on all of Plaintiffs' claims. Specifically, Defendant argues that: (1) Plaintiffs' breach of warranty and MCPA claims are time-barred and that (2) Plaintiffs' MCPA claims fail as a matter of law. Plaintiffs argue that they are entitled to summary judgment because their claims are timely and because their claims succeed as a matter of law.

**I.    Breach of Warranty Claims (Counts I, II, and III)**

BMW NA argues that Plaintiffs' breach of warranty claims under both federal law and Maryland state law are barred by the applicable four-year statute of limitations and that no tolling doctrine applies to save those claims. The federal claims asserted in Counts I and II are brought under The Magnuson-Moss Warranty Act ("MMWA"). That act allows a consumer to bring suit for damages caused by "the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract." 15 U.S.C. § 2310(d)(1); *Boggs v. BMW of N. Am., LLC*,

9

No. 5:20-CV-00023-M, 2020 U.S. Dist. LEXIS 193573, at *3-4 (E.D.N.C. Oct. 19, 2020). The MMWA does not contain a statute of limitations. Faced with a federal statute without a specified limitations period, this Court applies the limitations period of an analogous state law. *Innovative Sports Mgmt., Inc. v. 3508 Eastern LLC*, MJG-11-3268, 2012 WL 6563378, at *2 (D. Md. Dec. 13, 2012) (citing *North Star Steel Co. v. Thomas*, 515 U.S. 29, 33-34, 115 S. Ct. 1927 (1995)). The MMWA supplements state law by supplying a federal cause of action for warranty violations. *Wolf v. Ford Motor Co.*, 829 F.3d 1277, 1278 (4th Cir. 1987). Accordingly, courts adjudicating MMWA claims apply the limitations period applicable to state law breach of warranty claims. *See, e.g.*, *Ferro v. Volvo Penta of the Americas, LLC*, 731 F. App'x 208, 210 (4th Cir. 2018) (applying four-year statute of limitations applicable under North Carolina law claims for breach of warranty to Magnuson-Moss Warranty Act claims); *Carroll v. BMW of North America, LLC*, No. 1:19-cv-000224-JMS-TAB, 2019 WL 4243153, at *7 (S.D. Ind. Sept. 6, 2019) (applying Indiana law).

In this case, the four-year statute of limitations applicable to Maryland breach of warranty claims governs both the MMWA and state law claims. Md. Code Ann., Com. Law § 2-725(1). Under Maryland law, a breach of warranty claim accrues "when tender of delivery is made." § 2-725(2). Where a second purchaser buys used goods and a warranty remains applicable to the used goods, a cause of action for breach of warranty nonetheless accrues when the product is tendered to the original purchaser. *Elysium Corp. v. Nautor Oy Wilh. Schauman AB*, 618 F. Supp. 1343, 1344 (D. Md. 1985) (Hargrove, J.). As to each of Plaintiffs' vehicles, tender of delivery was made well outside of the four-year limitations

10

period. Accordingly, Plaintiffs' breach of warranty claims are time-barred unless a tolling doctrine applies.

### A. Fraudulent Concealment Tolling

Plaintiffs argue that they have demonstrated that Defendant concealed information about the defect in the N63 engine and misled its consumers. They contend that they were prevented from learning about the defect in their cars' engines as a result of Defendant's fraud and that the doctrine of fraudulent concealment tolling applies to render their breach of warranty claims timely. Defendant argues that Plaintiffs' breach of warranty claims are not saved by the doctrine of fraudulent concealment tolling. Under Maryland law, "[i]f the knowledge of a cause of action is kept from a party by the fraud of an adverse party, the cause of action shall be deemed to accrue at the time when the party discovered, or by the exercise of ordinary diligence should have discovered the fraud." Md. Code Ann., Cts. & Jud. Proc. § 5–203. "The fraudulent concealment theory may serve to toll the statute of limitations where '(1) the plaintiff has been kept in ignorance of the cause of action by the fraud of the adverse party, and (2) the plaintiff has exercised usual or ordinary diligence for the discovery and protection of his or her rights' . . . a party's diligence is crucial in establishing his right to equitable tolling due to fraudulent concealment." *Brown v. Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.*, 495 F. App'x 350, 355-56 (4th Cir. 2012) (citing *Frederick Rd. Ltd. Pshp. v. Brown & Sturm*, 360 Md. 76, 98, 756 A.2d 963, 975 (2000). As Judge Chasanow of this Court has noted, "It must be remembered that fraudulent concealment does not start a limitations period anew, but might suspend its running for a period of time

11

until the duty to inquire further again applies." *Thelen v. Mass. Mut. Life Ins. Co.*, 111 F. Supp. 2d 688, 694 (D. Md. 2000).

In Maryland, to state a claim for fraud, a plaintiff must show:

(1) the defendant made a false representation to the plaintiff, (2) the falsity of the representation was either known to the defendant or the representation was made with reckless indifference to its truth, (3) the misrepresentation was made for the purpose of defrauding the plaintiff, (4) the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) the plaintiff suffered compensable injury as a result of the misrepresentation.

*Hoffman v. Stamper*, 385 Md. 1, 867 A.2d 276, 292 (Md. 2005). "Under Maryland law, proof of fraud must be 'clear and convincing and such as will appeal strongly to the conscience of the court . . . ." *Finch v. Hughes Aircraft Co.*, 57 Md. App. 190, 469 A.2d 867, 887 (Md. 1984) (quoting *Peurifoy v. Congressional Motors, Inc.*, 254 Md. 501, 255 A.2d 332 (Md. 1969). "To be clear and convincing, evidence should be 'clear' in the sense that it is certain, plain to the understanding, and unambiguous, and 'convincing' in the sense that it is so reasonable and persuasive as to cause you to believe it." *Ingram v. Auto Palace, Inc.*, No. BPG-09-2660, 2012 U.S. Dist. LEXIS 149813, at *36 (D. Md. Oct. 17, 2012) (citing *Coleman v. Anne Arundel Cnty. Police Dep't*, 369 Md. 108, 797 A.2d 770, 781 n.16 (Md. 2002) (distinguishing the clear and convincing standard from preponderance of the evidence and reasonable doubt). "[W]here, as in a fraud claim, the nonmoving party must produce clear and convincing evidence to support [its] claim, that higher evidentiary burden is considered part of the summary judgment calculus." *McKenzie v. Comcast Cable Communs., Inc.*, 393 F. Supp. 2d 362, 375 (D. Md. 2005) (Titus, J.) (citations omitted).

In this case, Plaintiffs have not offered sufficient evidence from which a trier of fact could find by clear and convincing evidence that any alleged misrepresentations by

Defendant were made for the purpose of defrauding Plaintifffs. To show fraudulent intent, Plaintiffs point to internal BMW documents showing that Senior Product Engineer Michael Murray[4] reported in December 2010 that the presumed cause of the excessive oil consumption was the crankcase ventilator hose. (ECF No. 123-1 *SEALED* at 19.) Plaintiffs contend that by February 2013, Murray had concluded that worn valve stem seals were the presumed cause of the abnormal oil consumption. (*Id.* at 22.) Plaintiffs next highlight notice a provided by BMW to its dealers in March 2013 to argue that BMW intended to defraud its consumers because BMW did not disclose that the cause of the increased rate of oil consumption was a defect in the valve stem seals, but instead instructed dealers to explain generally the function of engine oil and the reasons it may be consumed by an engine. (*Id.* at 23.) Finally, Plaintiffs proffer an August 2013 service information bulletin that instructed dealers to provide a brochure advising customers who complained of excessive oil consumption that turbocharged engines can consumer larger quantities of engine oil compared to smaller engines. (*Id.* at 25.) Plaintiffs claim that BMW failed to disclose the valve stem seal defect in the service bulletin because it intended to defraud its consumers.

      BMW NA argues, however, that these facts show merely that it developed diagnostic procedures to address a limited number of complaints with N63 engines. (ECF No. 102 *SEALED* at 24.) Indeed, Murray testified that between 2013 and 2020, dealers reported only 57 cases out of over 84,000 vehicles that experienced any problem concerning valve

---

[4] Defendant has proffered Murray as an expert witness to testify at trial. Plaintiffs have offered their own expert, Darren Manzari. By Order dated January 4, 2022, this Court denied both Defendant's and Plaintiffs' motions to exclude the testimony of the expert of the other party. (ECF No. 130.)

13

stem seals. (ECF No. 102 *SEALED* at 20; Murray Tr. 165:23-166:8, 172:20-173:3.) Defendant notes that Murray testified that the new measure sent to dealerships was designed to address customer annoyance and not to diagnose any defect. (ECF No. 102 *SEALED* at 23; Murray Tr. 112:11-114:4.) Given that the uncontroverted evidence in the record is that BMW experienced a limited number of complaints about oil consumption and responded to dealers with notices that did not include the presumed cause of the problem but that did address potential solutions, Plaintiffs have not come close to reaching the "clear and convincing" standard of proof necessary to prevail on a fraud claim. They have not offered evidence sufficient to show that Defendant made misrepresentations for the purpose of defrauding them. Accordingly, this Court concludes as a matter of law the doctrine of fraudulent concealment does not toll the statute of limitations on Plaintiffs' breach of warranty claims.

**B.     Cross-Jurisdictional, Class-Action Tolling**

Plaintiffs also argue that their breach of warranty claims are timely because the doctrine of cross-jurisdictional, class-action tolling applies. Specifically, they argue that the filing of the complaint in the *Bang* class action on September 18, 2015 tolled the statute of limitations as to the breach of warranty claims. Complaint, *Bang v. BMW of N. Am., LLC*, Civil Action No. 15-6945 (D.N.J. Sept. 18, 2015), ECF No. 1. In the seminal cases of *American Pipe & Construction Co. v. Utah* and *Crown, Cork & Seal Co., v. Parker*, the United States Supreme Court articulated the class action tolling doctrine. *Am. Pipe & Constr. Co. v. Utah,* 414 U.S. 538 (1974); *Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345 (1983). That doctrine provides that the "commencement of a class action suspends the applicable statute

14

of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Am. Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 554 (1974); *see also Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 350 (1983) ("The filing of a class action tolls the statute of limitations as to all asserted members of the class . . . .")(internal citations omitted); *Daisy Mt. Fire Dist. v. Microsoft Corp.*, 547 F. Supp. 2d 475, 479-80 (D. Md. 2008) (Motz, J.)

The Maryland Court of Appeals has recently adopted the principal rationale of *American Pipe* and *Crown, Cork & Seal* that "the ends of efficiency and economy are undermined where members of a putative class have a genuine incentive to file prophylactic motions to intervene or individual complaints in order to prevent their claims from being barred by the statute of limitations." *Cain v. Midland Funding, LLC,* 475 Md. 4, 60, 256 A.3d 765, 798 (2021). The Maryland Court of appeals has held that "in addition to the requirements outlined in *American Pipe*, in order for the plaintiff to claim the benefit of class action tolling in a later-filed individual claim, the plaintiff must show that the class action complaint: (1) notified the defendants of not only . . . the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs[;]" and (2) "the individual suit must concern the same evidence, memories, and witnesses as the subject matter of the original class suit" and that "[c]laims as to which the defendant was not fairly placed on notice by the class suit are not protected under *American Pipe*[.]" *Cain v. Midland Funding, LLC*, 475 Md. 4, 61, 256 A.3d 765, 798 (2021) (internal citations omitted).

Notably, in *Cain*, the Court of Appeals declined to adopt successive class action tolling. The Court noted that "the principles of efficiency and economy of litigation that

15

support tolling of individual claims do not support the maintenance of untimely successive class actions," and held that the statute of limitations on the claims of a class of opt-out plaintiffs is not tolled by the filing of the original class action. *Cain v. Midland Funding, LLC*, 475 Md. 4, 63, 256 A.3d 765, 799 (2021) (citing *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1806 (2018) (Ginsburg, J.)). The Court of Appeals did, however, expand class-action tolling to individual claims where the individual plaintiff files suit in a jurisdiction other than the one in which the prior class action was brought. *Cain v. Midland Funding, LLC*, 475 Md. 4, 67, 256 A.3d 765, 802 (2021) ("the same principles that support intra-jurisdictional class action tolling also support cross-jurisdictional class action tolling").

### 1. Plaintiffs Rutherford, Inghram, Daniels, and Morgan

Cross-jurisdictional, class-action tolling does not apply to the breach of warranty claims of Plaintiffs Rutherford, Inghram, Daniels, and Morgan. As to each of their claims, the four-year statute of limitations expired in 2013, well before the filing of the Complaint in *Bang*. (ECF No. 95 at 27.) Because neither fraudulent concealment tolling nor cross-jurisdictional, class-action tolling applies to their breach of warranty claims, Plaintiffs Rutherford, Inghram, Daniels, and Morgan's breach of warranty claims fail as a matter of law. Accordingly, Defendant's Motion for Summary Judgment is granted on Counts I, II, and III as to those Plaintiffs.

### 2. Plaintiffs Albert, Berraoui, Clinton, and Swan

Defendant does not dispute that the doctrine of cross-jurisdictional, class-action tolling applies to the individual breach of warranty claims of Plaintiffs Berraoui, Clinton, and

Swan.[5] As to Plaintiff Albert, Defendant argues that he cannot take advantage of class-action tolling because his vehicle was equipped with an N63TU engine, and the *Bang* class consisted only of consumers whose vehicles contained N63 engines. (ECF No. 95-1 at 28.) Defendant argues that it was only notified in the Bang class action of potential claims concerning the N63 engine. (*Id.* at 29.) This argument is unavailing. Defendant's expert Murray testified that the allegedly problematic valve stem seals are identical in both types of engines. (ECF No. 123-1 *SEALED* at 34 n.11; ECF No. 109-38 at 23-24.) Defendant has offered no evidence to contradict this aspect of Murray's testimony. Accordingly, this Court concludes as a matter of law that that cross-jurisdictional, class-action tolling applies to the breach of warranty claims of Plaintiffs Albert, Berraoui, Clinton, and Swan and that those claims are therefore timely. The record is clear that the merits of those claims involve genuine disputes of material fact that are inappropriate for resolution at the summary judgment stage. Therefore, Counts I, II, and III as to Plaintiffs Albert, Berraoui, Clinton, and Swan will proceed to trial.

## II.  Maryland Consumer Protection Act Claims (Count IV)

Defendant is entitled to summary judgment as to all of Plaintiffs' claims under the Maryland Consumer Protection Act because these claims fail as a matter of law. The purpose of the MCPA is to protect consumers from unfair or deceptive trade practices, *Butler v. S & S Partnership*, 435 Md. 635, 666, 80 A.3d 298 (2013), by setting minimum statewide standards

---

[5] Defendant does argue that because Plaintiffs have joined their individual claims for the purposes of this lawsuit, they are proceeding as the functional equivalent of a class action. Defendant contends that because the Maryland Court of Appeals rejected class-action tolling for successive class actions in *Cain*, 475 Md. at 800-03, class-action tolling cannot apply in this case. This argument is meritless because Plaintiffs in this case are not members of a class.

for the protection of consumers. Md. Code Ann., Com. Law § 13-102(b)(1). The MCPA prohibits the use of "unfair, abusive or deceptive practice[s] . . . in the sale, lease, rental, loan or bailment of any consumer goods" or in an "offer for sale" of those goods. Md. Code. Ann., Com. Law § 13-303. The MCPA defines "sale" as "any (1) [s]ale of or offer or attempt to sell merchandise, real property, or intangibles for cash or credit; or (2) [s]ervice or offer for service which relates to any person, building, or equipment." *Id.* § 13-101(i). "Service," in turn, includes "any . . . repair of a motor vehicle." *Id.* § 13-101(j). To state a claim under the MCPA, plaintiffs must allege that the defendant's conduct was "(1) an unfair or deceptive practice or misrepresentation that [was] (2) relied upon, and (3) cause[d] them actual injury." *Stewart v. Bierman*, 859 F. Supp. 2d. 754, 768 (D. Md. 2012) (*citing Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 140, 916 A.2d 257 (2007).

Defendant argues that Plaintiffs claims fail as a matter of law because the MCPA prohibits false or misleading statements made in connection with the sale of a good and not post-sale statements of the type Plaintiffs allege BMW service representatives made. Plaintiffs, on the other hand, cite to the decision of Chief Judge Bredar of this Court in *Lincoln v. Ford Motor Co.*, No. JKB-19-2741, 2020 U.S. Dist. LEXIS 180985 (D. Md. Sep. 29, 2020), for the proposition that post-sale statements are still actionable under the MCPA. As an initial matter, in *Lincoln*, Judge Bredar concluded that a plaintiff had sufficiently stated a claim under the MCPA to survive a motion to dismiss where the plaintiff alleged that a service representative at a car dealership offered to accept his vehicle and an additional sum of money in exchange for a newer model of the vehicle that the representative claimed did not suffer from the same steering defect as the original vehicle. The plaintiff in that case

alleged that new vehicle did indeed suffer from the same defect. Judge Bredar concluded that plaintiff's "alleged trade of his 2016 truck for a 2017 model, which involved an outlay of $2,281, constituted an exchange of cash for merchandise, and states a plausible claim that a sale occurred." *Lincoln v. Ford Motor Co.*, No. JKB-19-2741, 2020 U.S. Dist. LEXIS 180985, at *15 (D. Md. Sep. 29, 2020).

In this case, however, this is no indication of a subsequent sale or trade during which BMW NA made misrepresentations as to the condition of the N63 engine. Plaintiffs allege instead that BMW NA directed its representatives to provide misleading information about the engine in response to consumer complaints. Because the alleged misrepresentations were not made in the course of a sale, Plaintiffs' MCPA claims fail as a matter of law. Accordingly, Defendant's Motion for Summary Judgment is granted as to all Plaintiffs' claims under Count IV.

## CONCLUSION

For the reasons stated above, BMW NA's Motion for Summary Judgment (ECF No. 95) is GRANTED IN PART AND DENIED IN PART. Specifically, it is GRANTED with respect to the claims of Plaintiffs Rutherford, Inghram, Daniels, and Morgan as to all four counts, and is GRANTED as to the claims of Albert, Berraoui, Clinton, and Swan on Count IV. The Motion is DENIED with respect to the breach of warranty claims of Plaintiffs Albert, Berraoui, Clinton, and Swan asserted in Counts I, II, and III. Plaintiffs' Cross-Motion for Summary Judgment (ECF No. 108) is DENIED.

A separate Order follows.

Dated: January 7, 2022

_____/s/_____
Richard D. Bennett
United States District Judge